```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

In re                                 CV-05-3304 (CPS)

      VLADIMIR OSTASHKO,
                                      Chapter 7
                  Debtor.            Case No. 03-26845 (ess)

--------------------------------X
ROBERT J. MUSSO, Trustee of the
Estate of Vladimir Ostashko,          Adv. Proc. No.
                                      04-01256 (ess)
                  Plaintiff,

      -against-
                                      MEMORANDUM OPINION
Vladimir Ostashko, Tanya Ostashko,    AND ORDER
Zuritta-Teks, Ltd., and
Harnik & Finkelstein,

                  Defendants.
--------------------------------X
```

SIFTON, Senior Judge.

This case is before the Court on appeal from an
interlocutory order of United States Bankruptcy Court for the
Eastern District of New York. That decision denied Appellant
Tanya Ostashko's motion for summary judgment on her counterclaim
against Chapter 7 Trustee Robert J. Musso, which seeks an order
declaring that certain marital assets are not property of the
Debtor's bankruptcy estate because they were awarded to her by a
state court in a matrimonial action. For the reasons set forth
below, the Bankruptcy Court's decision is reversed, and the
Bankruptcy Court is directed to enter judgment in favor of
Appellant Tanya Ostashko.

BACKGROUND

The following facts are drawn from the parties' submissions in relation to this appeal and from the bankruptcy record on appeal.   They are undisputed.

Tanya Ostashko ("Appellant") and Vladimir Ostashko ("Debtor") were married in Russia in 1992 and moved to the United States in 1994.   They separated in June 1997.   The Debtor now lives in Russia, and Appellant Tanya Ostashko resides in Staten Island, New York.

On January 15, 1998, the Debtor secured a loan from a Russian bank called the Commercial Bank of Informatics and Computing Technique Development Bank Informtechnika ("Informtechnika") in the amount of 5.5 million rubles, or approximately $900,000 (the "loan").   The Debtor's credit application included a statement of assets listing the marital home in Staten Island (the "marital home"), a Florida vacation home, a Moscow apartment (collectively, the "Marital Assets"), and several vehicles.

On March 3, 1998, Appellant Tanya Ostashko filed for divorce in New York Supreme Court, Richmond County (the "Matrimonial Action").   By a *pendente lite* order dated February 11, 1999, the court in the Matrimonial Action awarded Appellant exclusive use and possession of the marital home in Staten Island and a 1996 Chevrolet Blazer automobile, and directed the Debtor to pay, among other costs, carrying charges and costs of major repairs to

the marital home.  The parties were enjoined from transferring,
encumbering, or in any other way disposing of any property in
which either party had an interest, except in the ordinary course
of business or as consented to in writing by both parties.  The
Debtor was permitted to sell the Moscow apartment and Florida
vacation home and directed to deposit the net proceeds from the
sales in an attorney's escrow account.

In August 1998, the Debtor missed an interest payment on the
loan, and on November 20, 1998, Informtechnika filed an action
against him in New York Supreme Court.  On May 3, 1999, the
Debtor and Informtechnika entered a stipulation of settlement
resolving the dispute for $800,000 (the "Consent Judgment"), or
approximately $200,000 less than the value of the Marital Assets.
On May 6, 1999, Informtechnika sold its interest in the Consent
Judgment to Zuritta-Teks, Ltd. ("Zuritta-Teks") for sixteen
million rubles.

On August 13, 1999, Appellant moved to vacate the Consent
Judgment on grounds that it was a fraudulent conveyance in
violation of Section 270 of New York Debtor and Creditor Law,[1]

---

[1]Section 270 of New York Debtor and Creditor Law provides:

> "In this article 'assets' of a debtor means property not
> exempt from liability for his debts.  To the extent that any
> property is liable for any debts of the debtor, such property
> shall be included in his assets.
> 'Conveyance' includes every payment of money, assignment,
> release, transfer, lease, mortgage or pledge of tangible or
> intangible property, and also the creation of any lien or
> incumbrance.
> 'Creditor' is a person having any claim, whether matured
> or unmatured, liquidated or unliquidated, absolute, fixed or
> contingent.
> 'Debt' includes any legal liability, whether matured or

and that it violated the February 11, 1999 *pendente lite* order.
On August 31, 1999, the court granted Tanya Ostashko preliminary
relief, enjoining Informtechnika from enforcing the Consent
Judgment,[2] and by order dated October 10, 2000, the court granted
Tanya Ostashko's motion to add Zuritta-Teks as a party.  On
December 1, 2000, Zuritta-Teks removed the action to District
Court (the "District Court Action").

In June 2002, pursuant to the parties' stipulation, the
Matrimonial Action was marked off the calendar pending conclusion
of the District Court Action.

After a trial held between November 12 and November 15,
2002, District Judge Allyne Ross ruled that the Debtor "took out
the Informtechnika loan because he wanted to recoup in liquid
form the value of his marital assets before Tanya could assert a
claim to them." *Ostashko v. Ostashko*, 2002 WL 32068357, 14.  She
concluded that the Consent Judgment was actually and
constructively fraudulent, and that by entering into the Consent
Judgment, the Debtor violated the February 11, 1999 order
enjoining him from alienating or encumbering the Marital Assets.
*Id*. at 21, 28.  Judge Ross set aside the Consent Judgment to the
extent necessary to satisfy Tanya Ostashko's claims.  These

---

unmatured, liquidated or unliquidated, absolute, fixed or
contingent."  New York Debt. & Cred. Law § 270.

[2] "For some reason Informtechnika continued with its efforts to satisfy the
consent judgment with the marital assets, including the Staten Island house, in
spite of the fact that it no longer owned the judgment." *Ostashko v. Ostashko*,
2002 WL 32068357, 13.

claims had not, at the time, been fixed in the Matrimonial Action. Zuritta-Teks appealed the District Court decision, and the Second Circuit Court of Appeals affirmed, holding that the Consent Judgment constituted a fraudulent conveyance. *Ostashko v. Zuritta-Teks, Ltd.*, 79 Fed.Appx. 492 (2d. Cir. 2003).

Upon conclusion of the District Court Action, the Matrimonial Action was restored to the court calendar by order dated January 23, 2003. On July 1, 2003, the court, in an oral decision, granted a judgment of divorce after inquest (the "Divorce Judgment") on the grounds of cruel and inhuman treatment.

On October 23, 2003, the court in the Matrimonial Action, by a written "Decision After Inquest," awarded Tanya Ostashko 100% of the Marital Assets, which included the marital home, then valued at $890,000.00, proceeds from the sale of the Florida vacation home in the sum of $100,000.00, proceeds from the tax sale of the Florida vacation home lot in the sum of $16,939.68, and the Moscow apartment valued at $75,000.00, for a total of $1,081,939.68. In addition, the court awarded Appellant arrears in the amount of $211,093.72 and counsel fees in the amount of $135,000.00. Appellant was directed to submit a proposed judgment in accordance with this decision and the July 1, 2003 decision granting divorce.

On December 18, 2003, Zuritta-Teks filed an involuntary petition for relief under Chapter 7 of Title 11 of the United

States Code (the "Bankruptcy Code") against the Debtor (the

"Bankruptcy Case"). On February 29, 2004, Appellant made a

motion in the Bankruptcy Court for an order dismissing the

Bankruptcy Case under Section 707(a) of the Bankruptcy Code,[3] or

alternatively, granting relief from the automatic stay under

Sections 362(d)(1) and (d)(2) of the Bankruptcy Code[4] to permit

entry of judgment and execution of the Decision After Inquest.

By affidavit sworn to on April 13, 2004, the Debtor consented to

the entry of an Order for Relief,[5] and the Bankruptcy Court

---

[3] 11 U.S.C. §707(a) provides:
The court may dismiss a case under this chapter only after
notice and a hearing and only for cause, including--
(1) unreasonable delay by the debtor that is prejudicial to
creditors;
(2) nonpayment of any fees or charges required under chapter
123 of title 28; and
(3) failure of the debtor in a voluntary case to file, within
fifteen days or such additional time as the court may allow
after the filing of the petition commencing such case, the
information required by paragraph (1) of section 521, but only
on a motion by the United States trustee.

[4] 11 U.S.C. §362(d) provides:
On request of a party in interest and after notice and a
hearing, the court shall grant relief from the stay provided
under subsection (a) of this section, such as by terminating,
annulling, modifying, or conditioning such stay--
(1) for cause, including the lack of adequate protection of an
interest in property of such party in interest;
(2) with respect to a stay of an act against property under
subsection (a) of this section, if--
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective
reorganization...

[5] 11 U.S.C. § 303(f) provides:
Notwithstanding section 363 of this title, except to the extent
that the court orders otherwise, and until an order for relief
in the case, any business of the debtor may continue to
operate, and the debtor may continue to use, acquire, or
dispose of property as if an involuntary case concerning the
debtor had not been commenced.
However, even in the case of an involuntary petition, the automatic
stay takes effect as of the petition date. *See In re Flores*, 291 B.R.
44, 56 (Bankr. S.D.N.Y. 2003) ("[t]he only correct conclusion, given
the wording of section 362, is that section 362 applies during the gap
period, thus preventing prepetition creditors from collecting from the
debtor."

entered an Order for Relief on April 20, 2004. Also on April 20, the Bankruptcy Court granted Appellant relief to the extent of modifying the automatic stay to permit her to seek entry of a final judgment in the Matrimonial Action ("Final Divorce Judgment"), with that relief to become effective after the appointment of a trustee so that the trustee could determine whether to pursue an appeal of the judgment in the Matrimonial Action. On April 21, 2004, the Office of the United States Trustee appointed Robert J. Musso as Chapter 7 trustee (the "Trustee").

On May 5, 2004, the Final Divorce Judgment was entered in accordance with the Divorce Judgment and Decision After Inquest. By order dated May 19, 2004, the Bankruptcy Court modified the automatic stay *nunc pro tunc* to permit the New York Supreme Court to enter the Final Divorce Judgment.

On May 20, 2004, the Trustee commenced an adversarial proceeding (the "Adversary Proceeding") by filing a complaint with the Bankruptcy Court (the "Complaint"). The Trustee seeks to avoid the interest of Tanya Ostashko in property owned by the Debtor and to have that property turned over to him. On June 21, 2004, Tanya Ostashko filed counterclaims against the Trustee. By her first counterclaim against the Trustee, the counterclaim that is at issue in the present action, Appellant Tanya Ostashko seeks a declaration that the Marital Assets are not property of the Debtor's bankruptcy estate.

On December 6, 2004, Appellant filed a motion for summary judgment (the "Summary Judgment Motion") in the Bankruptcy Court as to her counterclaims against the Trustee. As to her first counterclaim, the Trustee conceded that there were no genuine issues of fact, but asserted that he was entitled to judgment as a matter of law that the Marital Assets were property of the bankruptcy estate. By written decision dated June 1, 2005, the Bankruptcy Judge denied Appellant's Summary Judgment Motion, ruling that because the Divorce Judgment was not formally entered before the Petition Date, Appellant's rights to the Marital Assets did not vest prior the Petition Date, and, as a result, the Marital Assets are part of the Debtor's bankruptcy estate. At the request of the parties, the balance of the Summary Judgment Motion was continued for further hearing.

On July 13, 2005, Appellant filed an appeal with this court, along with a motion for leave to file an interlocutory appeal, seeking review of the Bankruptcy Court's denial of summary judgment. On September 12, 2005, I granted Appellant's motion for leave to appeal. Appellant filed a motion in Bankruptcy Court seeking a stay of the Trustee's sale of the marital home pending appeal, and the Bankruptcy Court denied her motion. Appellant then filed a motion for stay pending appeal with this court, and on September 26, 2005, I denied her motion. On that same date, the Second Circuit Court of Appeals also denied her motion for stay pending appeal.

On September 27, 2005, the Trustee's auctioneer conducted an auction sale of the marital home, and the highest bid at auction was $1,325,000. The sale has not, as of yet, been confirmed by the Bankruptcy Court as the Appellant has objected to the confirmation, arguing that the sale price at auction was well below the market price. Appellant asserts, and it is not disputed, that whether the sale is confirmed or not, the appeal is not moot because the outcome of the appeal will decide the rightful owner of the proceeds of the sale.

Presently before this court is Tanya Ostashko's appeal from the Bankruptcy Court's June 1, 2005 decision denying in part her Summary Judgment Motion. For the reasons that follow, the decision of the Bankruptcy Court is reversed, and the Bankruptcy Court is directed to enter judgment in favor of Appellant Tanya Ostashko.

## DISCUSSION

### Jurisdiction

This Court has jurisdiction to hear this Motion pursuant to 28 U.S.C. 158(a), which authorizes District Courts to hear appeals from interlocutory orders of Bankruptcy Courts with leave of the Court.

### Standard of Review

When reviewing decisions of the Bankruptcy Court, District Courts apply a de novo standard of review to the Bankruptcy Court's conclusions of law and review a Bankruptcy Court's

findings of fact under a clearly erroneous standard. *See* Fed. R. Bankr.P. 8013; *In re First Central Financial Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990).

Federal Rule of Civil Procedure 56, made applicable to the Adversary Proceeding in Bankruptcy Court by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed.R. Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Electrical Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).

<u>Automatic Stay</u>

According to Section 362 of the Bankruptcy Code, the automatic stay becomes effective at the time of the filing of a bankruptcy petition. 11 U.S.C. §362(a). "It is intended immediately to put the debtor and the debtor's property under the

protection of the bankruptcy court." Henry J. Sommer & Margaret
Dee McGarity, *Collier Family Law and the Bankruptcy Code* ¶
5.03[1] at 5-28 (Rev.2005) (hereinafter, "Collier Family Law").

> "The automatic stay is one of the fundamental debtor
> protections provided by the bankruptcy laws. It gives
> the debtor a breathing spell from his creditors. It
> stops all collection efforts, all harassment, and all
> foreclosure actions. It permits the debtor to attempt a
> repayment or reorganization, or simply to be relieved of
> the financial pressures that drove him into bankruptcy."

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977).

The stay bars "the commencement or continuation...of a
judicial, administrative, or other action or proceeding against
the debtor that was or could have been commenced" before the
bankruptcy case or "to recover a claim against the debtor that
arose" before the bankruptcy case. 11 U.S.C. §362(a). "Because
of its enormous scope, the automatic stay extends to most family-
related proceedings." *Collier Family Law*, §5.03[1] at 5-28.[6]
However, "the interest of the nondebtor spouse does not come into
the bankruptcy estate when only one spouse has filed a bankruptcy
case." *Collier Family Law*, §5.02[1] at 5-24. If rights in
property awarded in a state court action have become binding on
the parties, "the bankruptcy estate may have no claim to property
awarded to the nondebtor spouse." *Collier Family Law*, §5.02[2]
at 5-26.

---

[6] Section 362(b) contains exceptions to the broad automatic stay, including
an exception for the commencement or continuation of an action or proceeding for
alimony, maintenance, or support. 11 U.S.C. §362(b). The parties do not dispute
that the present case involves an award of property, not alimony, maintenance, or
support.

Questions as to whether a debtor has an interest in property sufficient to bring it within the bankruptcy estate are answered by reference to applicable state law. *See Butner v. United States*, 440 U.S. 48, 54 (1979). But questions as to what constitutes property of the estate are answered by reference to federal bankruptcy law. *See Cooper v. Frederes (In re Frederes)*, 141 B.R. 289, 291 (Bankr. W.D.N.Y. 1992).

Under New York law:

"Except where the parties have provided in an agreement for the disposition of their property...the court, in an action wherein all or part of the relief granted is divorce, or the dissolution, annulment or declaration of the nullity of a marriage...shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment."

N.Y. Dom. Rel. Law §236(B)(5)(a).

Section 544 of the Bankruptcy Code provides, in pertinent part, that a trustee shall have, as of the Petition Date, the ability to avoid certain transactions in order to recover property of the debtor's estate. 11 U.S.C. § 544.

"Section 544 is known in its entirety as the 'strong-arm clause' of the Code because of the avoidance power it granted to the trustee. H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 85 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. The statute effectively transforms the trustee into 'the ideal creditor, irreproachable and without notice, armed *cap-a-pie* with every right and power which is conferred by the law of the state upon its most favored creditor.'"

*Feldman v. Feldman (In re Feldman)*, 54 B.R. 659, 660 (Bankr.

D.N.J. 1985) (*quoting In re Waynesboro Motor Co.*, 60 F.2d 668, 669 (S.D.Miss.1932)).

The Trustee argues that if the non-debtor spouse's rights to the property at issue do not vest before the Petition Date, "the trustee's status as a hypothetical lien creditor under Section 544 of the Bankruptcy Code 'cuts off' the non-debtor spouse's rights to the property." They issues here are whether Appellant Tanya Ostashko had a vested right to equitable distribution of the Marital Assets, and if she did, whether her rights to the Marital Assets vested prior to the Petition Date. I address these issues, in turn, below.

## Appellant's Right to Equitable Distribution

Under New York law, a spouse's right to equitable distribution of the marital assets does not vest until a divorce judgment is obtained. N.Y. Dom. Rel. Law §236(B)(5)(a); see also Sinha v. Sinha, 285 A.D.2d 801, 803, 727 N.Y.S.2d 537 (2d Dep't 2001) (stating "the parties' respective rights in their marital property [cannot] be determined unless and until Supreme Court [has] granted a divorce"); *see also*, 14 N.Y. D.R.L. § 236 Part B, *Practice Commentaries*, C 236B:23 at 407-708 (stating that although "no rights in equitable distribution vest upon commencement of the [matrimonial] action...once the court decides that a divorce will be granted or that the marriage will otherwise be terminated, equitable distribution is then assured and the right to it vests.")

The transcript of the July 1, 2003 inquest before Justice Rachel A. Adams of the New York Supreme Court shows clearly that the court granted Appellant a judgment of divorce during that hearing on the grounds of cruel and unusual punishment, recognizing that "if you are not divorced, you are not entitled to equitable distribution."  July 1, 2003, Transcript, at 3, 12. The court's October 23, 2003 Decision After Inquest also states, "[o]n July 1, 2003 a judgment of divorce was granted after inquest on the grounds of cruel and inhuman treatment."  Thus, it is clear that the court in the Matrimonial Action granted Appellant a judgment of divorce prior to the Petition Date, even though the judgment was not entered until after the Petition Date.

Under New York law, the right to equitable distribution vests upon granting of a divorce judgment, even if judgment has not been formally entered.  *See Estate of Agliata v. Agliata*, 589 N.Y.S.2d 236 (N.Y. Sup. Ct. 1992)("the right to equitable distribution vests upon the determination of a court that a judgment of divorce is to be granted, and that actual entry *vel non* of a written judgment pursuant to such a determination, which is a purely ministerial act, is not essential to the vesting of that right"); *Cornell v. Cornell*, 7 N.Y.2d 164 (1959) (holding that once a state court has granted a divorce judgment in a matrimonial case, the entry of the Judgment thereafter is "ministerial"); *Jayson v. Jayson*, 54 A.D.2d 687 (2d Dep't 1976)

("[t]he entry of the judgment of divorce is a mere formality or ministerial act"). In each of these cases, entry of the judgment of divorce did not occur until after one of the parties had died. Nevertheless, the courts upheld the divorce judgments, holding that the entry of the judgment was ministerial, and that the determination of the court that divorce was to be granted is what was essential.

The Bankruptcy Court declined to apply these cases to the present case, stating only that these cases involved death of one of the spouses, while the present case does not. That distinction is not determinative in this case because the central issue in all of these cases is when a spouse's interest in marital property vests – upon granting of a judgment of divorce, or upon formal entry of that judgment.

Entry of a divorce judgment is "ministerial" even if it consisted of a proposed judgment filed by a party's attorney, review and signature by the judge, and entry by the court clerk. As the *Cornell* court stated:

> "The basis for entry both of an interlocutory and final judgment of divorce is the decision of the court or the report of an Official Referee, and the entry of the judgment is the ministerial act of the clerk (*Snell v. Snell*, 177 Misc. 923), which is not altered by the circumstance that it is usually signed by the Justice of the court by whom the decision was made. 'The signature of the judge simply relieved the clerk from the necessity of comparing the decision of the court with the proposed judgment furnished by the plaintiffs' attorney, to see that they corresponded. It was no part of the judgment and was wholly superfluous. (*Loeschick v. Addison*, 3 Rob. 331.) The decision was the only authority for entering the judgment. The entry of judgment is the act

of the clerk, and he might himself have prepared and
entered it, or he could adopt the form prepared by the
plaintiffs' attorney.' (*Clapp v. Hawley*, 97 N. Y. 610,
614-615.)  The same thing applies to divorce actions
(Civ. Prac. Act, § 1174; *Snell, v. Snell*, supra.).

7 N.Y.2d at 168.

The Trustee and Bankruptcy Court cite a number of cases for
the general proposition that a spouse's right to equitable
distribution does not vest until a judgment of divorce is
"entered." *See, e.g., Sinha v. Sinha,* 285 A.D.2d 801, 802 (2d
Dep't 2001) ("spouses' respective rights in marital property do
not vest under New York law...until entry of a judgment
dissolving the marriage")(internal quotations omitted); *In re
Cole*, 202 B.R. 356, 360 (Bankr. S.D.N.Y. 1996) ("spouses'
respective rights in marital property do not vest under New York
law, however, until entry of a judgment dissolving the
marriage"); *In re Polliard*, 152 B.R. 51, 54 (Bankr. W.D.Pa. 1993)
("the non-debtor spouse's interests in the Debtor's share of the
marital property, which are the subject of equitable distribution
proceedings in a divorce action commenced prior to the bankruptcy
filing, are cut off by the bankruptcy filing where the domestic
relations court has not, at the time of the bankruptcy, fixed the
equitable distribution rights by judgment"); *In re Greenwald,* 134
B.R. 729, 731 (Bankr. S.D.N.Y. 1991) ("rights to the distributive
award vest[] upon the entry of the Judgment of Divorce"); *In re
Howell,* 311 B.R. 173, 179 (Bankr. D.N.J. 2004) ("where a
bankruptcy filing preceded a judgment of divorce, the pending

claim for equitable distribution is a post petition claim"). However, the decision below ignores the fact that in the present case, the court in the Matrimonial Action granted a judgment of divorce to Appellant on July 1, 2003, well in advance of the Petition Date. That fact alone renders this case outside the scope of every case cited by the Trustee and the Bankruptcy Court for the proposition that a spouse's right to equitable distribution does not vest until a judgment of divorce is "entered." In none of those cases was the court asked to distinguish between a decision *granting* a judgment of divorce and *entry* of that judgment. In *Greenwald*, for example, the judgment of divorce was granted *and* entered *before* the petition date. Accordingly, the bankruptcy court ruled that the spouse's rights to equitable distribution vested before the petition date, and the property at issue was therefore not part of the bankruptcy estate. 134 B.R. 729. In the remaining cases, no judgment of divorce had been either granted *or* entered before the petition date; thus, the courts were not asked to draw a distinction between a *grant* of a judgment of divorce and *entry* of that judgment. In fact, the court in one case cited by Trustee, *Sinha*, uses the terms interchangeably. 285 A.D.2d 801, 802 ("spouses' respective rights in marital property do not vest under New York law...until entry of a judgment dissolving the marriage"); *id*. at 803 ("marital property rights are determined upon the granting of a divorce"). These cases stand for the

general proposition, consistent with *Agliata*, *Cornell*, and
*Jayson*, that a right to equitable distribution does not vest
until the matrimonial court grants judgment of divorce.

Because Appellant Tanya Ostashko was clearly granted a
judgment of divorce on July 1, 2003, well in advance of the
Petition Date, and because entry of a judgment of divorce is
merely a ministerial act, I hold that Appellant's right to
equitable distribution vested on July 1, 2003, prior to the
Petition Date.

## Appellant's Right to the Marital Assets

Having concluded that Tanya Ostashko's right to equitable
distribution vested on July 1, 2003, the date that the
matrimonial court granted a judgment of divorce, I turn to the
issue of whether she was awarded the property before the Petition
Date, so that it became property of the non-debtor spouse which
should thus be excluded from the bankruptcy estate. *See Collier
Family Law*, §5.02[2] at 5-26.

The Appellant cites two cases, *Rexnord Holdings, Inc. v.
Bidermann*, 21 F.3d 522 (2d Cir. 1994), and *Taylor v. Taylor*, 1999
WL 304900, 639 (S.D.N.Y. 1999), to support her claim that the
Decision After Inquest, which awarded her 100% of the Marital
Assets was binding before the Petition Date; therefore, the
Marital Assets are rightfully hers and should not be included in
the bankruptcy estate.

In *Rexnord*, the Second Circuit Court of Appeals was asked to

determine whether a district court judgment awarding over
$12,000,000 to Rexnord Holdings (RHI) that was granted by the
judge *before* the debtor Bidermann filed for bankruptcy but was
entered by the clerk *after* he filed for bankruptcy violated the
automatic stay.  The Court held that it did not and, accordingly,
was valid.  In that case, the district court judge, after a
hearing, had rendered an oral decision, stating, "I'm going to
order that judgment be entered in favor of [RHI] in the amount of
$12,946,748 principal and accrued interest...."  21 F.3d at 525.
Before the written judgment was entered, however, Bidermann filed
for Chapter 11 bankruptcy.  In holding that the judgment did not
violate the automatic stay, the Court stated, "[w]hile the
commencement or continuation of a judicial action or proceeding
clearly is subject to the automatic stay of section 362, we do
not believe that the simple and 'ministerial' act of the entry of
a judgment by the court clerk constitutes the continuation of a
judicial proceeding under section 362(a)(1)."  21 F.3d at 527.
The Court further reasoned, "[t]he judicial proceedings were
concluded at the moment the judge directed entry of judgment, a
decision on the merits having then been rendered."  Id. at 528.

   In the present case, a "decision on the merits" was
certainly "rendered" when the court in the Matrimonial Action
issued its Decision After Inquest on October 23, 2003 awarding
Appellant 100% of the Marital Assets.  The judgment therefore did
not violate the automatic stay and is valid, pursuant to the

Court's holding in *Rexnord*.

In *Taylor*, a district court in the Southern District of New York held that Ms. Taylor's interest in certain funds vested at the time the state court judge issued an oral decision granting her a judgment of divorce and awarding her the funds, although Mr. Taylor filed for bankruptcy three days later, before formal entry of the decision, "such that these sums [could] not be considered property of Mr. Taylor's bankruptcy estate." 1999 WL 304900, 643. The Court stated:

> "it is well established under federal bankruptcy law
> that such ministerial acts as the entry of final
> judgment will be accorded their full effect even if the
> debtor's filing of the bankruptcy petition has already
> triggered the automatic stay...Any other rule would
> encourage and reward a race to the courthouse and abuse
> by debtors of the Bankruptcy's Code [sic] automatic
> stay." (internal citations omitted).

*Id.*

The Trustee and Bankruptcy Court attempt to distinguish these cases on the ground that those cases did not address a trustee's strong-arm powers. However, if it is determined that Appellant's rights to the Marital Assets vested prior to the petition date, the Marital Assets could not be included in the bankruptcy estate, and the Trustee would have no right to them, thereby rendering the Trustee's "strong-arm powers" irrelevant. The Bankruptcy Court, in its decision denying Appellant's Summary Judgment Motion, stated:

> "In *In re Taylor*, the court addressed a dispute between
> a non-debtor spouse and an individual debtor without the

> 'strong-arm' avoidance powers of a Chapter 7 trustee.
> Here, the Trustee has the status of a judgment lien
> creditor as of the Petition Date, which places him in a
> position superior to that of a creditor who does not have
> a judgment lien."

Although a Chapter 7 trustee has the status of a judgment lien
creditor, the Trustee's "strong-arm powers" do not include power
over property that is not part of the bankruptcy estate. The
Trustee would be in a superior position to Appellant were she an
unsecured creditor, but that is simply not the case here. As was
the case in *Taylor*, Appellant is a non-debtor spouse whose
property should not be included in the bankruptcy estate. The
Court in *Taylor* found that the non-debtor spouse's interest in
the property vested when the oral decision was rendered, before
the bankruptcy filing, so that the property was not a part of the
debtor's bankruptcy estate. The Court stated:

> "This Court has found no New York case authority
> supporting Mr. Taylor's strained argument that the oral
> decision of Justice Diamond itself could confer no rights
> upon Ms. Taylor and that Ms. Taylor's rights could not
> vest before formal entry by the court of a final judgment
> memorializing the oral decision. In the absence of any
> such precedent, this Court doubts that the New York
> courts would in fact adopt such a formalistic approach
> ripe with opportunities for abuse and for frustration of
> the courts' orders."

*Taylor*, 1999 WL 304900, 643.

Although *Taylor* did not concern a Trustee's "strong-arm
powers," the case stands for the proposition that once a court
has issued a decision granting property to a non-debtor spouse,
the non-debtor spouse's interest in that property vests

immediately, and that property should not be included in the
debtor's bankruptcy estate, even if the decision is not formally
entered until after the Petition Date.  Applying the holding in
that decision to the present case results in Appellant's rights
to the Marital Assets vesting on October 23, 2003.  The analysis
stops there, and there is no need to address the Trustee's
"strong-arm powers," because they do not exist as far as the
Marital Assets are concerned.

The Trustee and the Bankruptcy Court rely primarily on one
case from Bankruptcy Court in the Southern District of New York,
*In Re Anjum*, 288 B.R. 72 (Bankr. S.D.N.Y. 2003), for the
proposition that a pre-petition award of property is excluded
from the bankruptcy estate only if the judgment of divorce was
*entered* prior to the Petition Date.  However, *Anjum* is also
distinguishable from the present case.  In that case, debtor-
defendant Sohail Anjum ("Anjum") had commenced a divorce action
against plaintiff Iffat Ara ("Iffat").  The parties reached an
agreement with respect to equitable distribution of Anjum's
business.  The stipulation was never reduced to a signed writing
by the parties.  Instead, at a hearing held on November 21, 2001,
"[c]ounsel, with considerable assistance from [the matrimonial
judge], articulated the terms of the agreement orally on the
record."  288 B.R. at 73.  The terms of that stipulation evolved
over time.  On January 17, 2002, Anjum filed for bankruptcy.  On
February 15, 2002, "without moving to lift the automatic stay,

Anjum's matrimonial attorney presented a Judgment of Divorce to the matrimonial court which was signed by [the matrimonial judge] and filed or docketed on March 18, 2002." 288 B.R. at 74.

The Bankruptcy Court in *In re Anjum* ruled that the pre-petition stipulation between the spouses, which was not incorporated in the judgment of divorce, did not exclude the marital property from the bankruptcy estate. 288 B.R. 72.

The Trustee and Bankruptcy Court in the present case argue that just as the pre-petition stipulation in *Anjum* did not serve to exclude the marital property from the bankruptcy estate, the pre-petition Decision After Inquest should not serve to exclude the Marital Assets from the Debtor's bankruptcy estate. However, the "award" of property in that case was by stipulation, not "a decision on the merits." More important, the Court in *Anjum* held that the "neither the terms of the Stipulation nor even its existence are germane to this decision" because the real issue was whether or not the non-debtor spouse had obtained a judgment of divorce pre-petition. 288 B.R. at 74. In *Anjum*, the judgment of divorce had not even been presented to, let alone granted, signed, or entered by, the matrimonial judge until after the Petition Date.

Accordingly, I conclude that when the court in the Matrimonial Action issued the Decision After Inquest awarding 100% of the Marital Assets to Appellant Tanya Ostashko, Appellants rights to that property vested, and the property

should be excluded from the bankruptcy estate.

CONCLUSION

For the reasons stated above, I conclude that the Marital Assets, which were awarded to appellant on October 23, 2003, should be excluded from the bankruptcy estate, and the Bankruptcy Court therefore erred in denying summary judgment to appellant. The Bankruptcy Court's decision is, accordingly, reversed, and the Bankruptcy Court is directed to enter judgment in favor of Appellant Tanya Ostashko.

The Clerk is directed to furnish a filed copy of the within to all parties and to the Bankruptcy Court.

SO ORDERED.

Dated : Brooklyn, New York
        November 16, 2005

By: /s/ Charles P. Sifton (electronically signed)
    United States District Judge